IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| D.B.V.,[1] | § | |
|     Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | 1:24-CV-119-H-BR |
| Commissioner, Social Security Administration, | §<br>§<br>§ | |
|     Defendant. | §<br>§ | |

### **<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO AFFIRM THE DECISION OF THE COMMISSIONER</u>**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of a decision by the Commissioner of Social Security ("Commissioner"), who denied Plaintiff's application for disability insurance benefits under Title II[2] of the Social Security Act ("the Act"). (ECF 1).

Pursuant to the Northern District of Texas Special Order No. 30-350 (Sep. 11, 2023), this case was originally assigned to the undersigned United States Magistrate Judge to serve as presiding judge. (*See* ECF 4). Following notice to the Clerk of Court that one or more parties did not consent under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(a), this case was then reassigned to the presiding United States District Judge and automatically referred for the undersigned to issue findings, conclusions, and recommendations (this "Recommendation") to the

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[2] 42 U.S.C. §§ 401–33.

presiding District Judge. After considering the filings and applicable law, the undersigned recommends that the Court AFFIRM the Commissioner's decision.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed the disputed application in February of 2021 alleging disability beginning January 16, 2020. (ECF 13-1 at 195–97; *see also id.* at 19).[3] After initial and upon-reconsideration denials, Plaintiff sought a review of his application by an Administrative Law Judge ("ALJ"). (*Id.* at 19). Plaintiff and a vocational expert testified at a telephonic hearing before an ALJ on November 7, 2023. (*Id.*). The ALJ found that Plaintiff was not disabled during the period covered by his application. (*Id.* at 31).

The Social Security Administration (the "Agency") Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (*Id.* at 5–8); *see* 42 U.S.C. §§ 405(g), 1383(c)(3) (establishing the subject matter jurisdiction of United States District Courts to review final decisions of the Commissioner) *and Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) (confirming that the Appeals Council declining to review an ALJ decision establishes that ALJ decision as final).

## II.     STANDARD OF REVIEW

A person may qualify for disability insurance benefits under the Act if they are disabled. 42 U.S.C. § 423(a)(1). A person is disabled according to the terms of the Act if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

[3] Most pages in the administrative record (ECF 13) have been marked with multiple different, inconsistent page numbers by the various systems that produced the records in question; citations in this Recommendation are not to these internal page numbers, but are rather to the page numbers generated by the Court's electronic case filing ("ECF") system, which can be found at the top of the page when a filing is accessed through ECF or PACER.

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); *accord* 20 C.F.R. § 404.1572(a)–(b).[4]

ALJ's use a standardized framework to determine whether an applicant is disabled under the Act:

> In evaluating a disability claim, the [ALJ] conducts a five step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Social Security Administration to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Audler*, 501 F.3d at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F. 3d at 923 (citing *Leggett v.*

---

[4] The Agency has the authority to promulgate regulations implementing the Act under 42 U.S.C. § 405(a). In addition to traditional notice-and-comment regulations issued according to the Administrative Procedure Act, 5 U.S.C. § 553(b)–(c), the Social Security Administration also publishes precedential rulings and statements of policy or interpretation known as Social Security Rulings (each an "SSR"). 20 C.F.R. § 402.160(b)(1) (effective January 17, 2025; previously codified at 20 C.F.R. § 402.35).

*Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

When reviewing disability determinations made by the Commissioner, a court is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). These limitations are imposed by statute:

> The findings of the Commissioner [ ] as to any fact, if supported by substantial evidence, shall be conclusive . . . and where a claim has been denied by the Commissioner . . ., the Court shall review only the question of conformity with [Agency] regulations and the validity of such regulations.

42 U.S.C. § 405(g). If the ALJ fails to apply the proper legal standard, a denial must be remanded and reconsidered. *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990). If the ALJ applies the proper standards, however, and relies on any substantial evidence, the decision must be upheld. *Id*.

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion and constitutes more than a mere scintilla but less than a preponderance of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (cleaned up). "It must do more than create a suspicion of the existence of the fact to be established[.]" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). The reviewing court may not reweigh evidence or substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Hardman*, 820 F.3d at 151. Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977).

Even a decision unsupported by substantial evidence will not always be vacated or reversed. An error is harmless and will not result in remand "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v.*

*Saul*, 986 F.3d 551, 556 (5th Cir. 2021).[5] In short, a decision denying Social Security disability benefits is entitled to great deference and will only be overruled if the correct legal standards were not applied, or if the decision turned on a conclusion for which there was no substantial evidence.

### III.  THE ALJ'S FINDINGS

At steps two and three[6] of the five-step process, the ALJ found that Plaintiff had "the following severe impairments: neurocognitive disorder; disorder of the spine; disorder of the major joints; and, disorder of breathing[,]" and that those impairments did not meet a listing. (ECF 13-1 at 22–23). The ALJ then assessed Plaintiff as having the RFC "to perform medium work . . . [while being limited to] occasional exposure to dust, fumes, and other pulmonary irritants; and, understanding, remembering, and carrying out simple work-related instructions." (*Id.* at 26).

Based on these limitations, the ALJ found at step four that Plaintiff could not perform his past relevant work, but that, based on input from a vocational expert, there were jobs in the national economy that a person with the Plaintiff's age, education, work experience, and limitations could perform, such as "tray worker," "hospital housekeeper," and "bundle clerk." (*Id.* at 30–31). Because Plaintiff's impairments do not prevent him from being able to perform substantial gainful activity, the ALJ found him not disabled. (*Id.* at 31).

---

[5] Failure to apply the correct legal standard can also be a harmless error; *Keel* itself upheld the harmless application of an erroneous step-two "severity" standard. *Keel*, 986 F.3d at 555–56. However, because an "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[,]" a failure to apply the correct legal standard can only be sustained as a harmless error if sufficient reasoning is articulated in his decision to support it under the legal standard that he failed to apply. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[6] At step one, the ALJ found that Plaintiff engaged in substantial gainful activity from October of 2021 through September of 2022, and this finding is not disputed before the Court. (ECF 13-1 at 22; *see also* ECF 14 at 2 (Plaintiff's Brief)). The remainder of the ALJ's findings pertained to the period covered by Plaintiff's application in which he had not engaged in substantial gainful activity. (ECF 13-1 at 22).

## IV.     PLAINTIFF'S ARGUMENTS

Plaintiff contends that the ALJ erred in two ways when determining his RFC. (ECF 14 at 1). First, the ALJ found that one of Plaintiff's severe impairments was a neurocognitive disorder, and also separately found that Plaintiff was limited to understanding, remembering, and carrying out simple work-related instructions. (ECF 13-1 at 22, 26). Plaintiff contends these findings are inconsistent and amount to a failure by the ALJ to apply the correct legal standard. (ECF 14 at 3–7; ECF 20 at 1–3).

Second, the ALJ noted that "no treating or examining source provided a statement regarding the claimant's functional capacity" and that two state agency medical consultants, after reviewing the record, had "determined that there was insufficient evidence to reach any conclusions regarding the claimant's functional abilities[.]" (ECF 13-1 at 29). The ALJ then decided Plaintiff's application without obtaining a consultative medical examination or other supplementary medical evidence. (*Id.* at 29–31). Plaintiff argues that this was a failure to develop the record, violating applicable legal standards. (ECF 14 at 7–10; ECF 20 at 3–5).

The Commissioner responds that the ALJ's determination of Plaintiff's RFC was consistent with findings on Plaintiff's impairments (ECF 19 at 2), that no supplementation of the record was necessary (*id.* at 6), that any failure to adequately supplement the record was harmless (*id.* at 6–7), and that the ALJ's decision was generally supported by substantial evidence and applied the correct legal standards (*id.* at 7–10).[7]

---

[7] The undersigned notes Plaintiff's concerns over whether the briefing in this case has joined issue. (ECF 20 at 1–4). The undersigned finds that the Commissioner has adequately responded to the arguments raised in Plaintiff's brief, and that no waiver of any defense is implicated in this case.

### A.     *Plaintiff's Mental Impairment*

Plaintiff's first argument rests on the premise that the ALJ contravened relevant legal standards by finding that Plaintiff had a severe mental limitation, but failing to find any limitation in Plaintiff's capacity to perform mental "basic work activities" as that phrase is used in Agency regulations. (ECF 14 at 3–4). Plaintiff asserts that the RFC determination should have included some mental limitation that it did not, and that the case must be remanded for reconsideration to that end. (*Id.* at 6–7). As the Commissioner points out in response, this is a misunderstanding of the legal standards at issue. (ECF 19 at 4–5).

At steps two and three of an ALJ's five-step sequential analysis, evaluation of mental impairments is done using a "special technique." 20 C.F.R. § 404.1520a(a). This technique requires ALJs to rate the degree to which any of a claimant's medically determinable mental impairments limit that claimant's "ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* at § 404.1520a(c)(2). This rating is determined on a five-point scale in each of four functional areas: understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 404.1520a(c)(4). The ratings are then used in steps two and three of the five-step sequential analysis to determine whether a claimant's mental impairment is "severe" and whether it meets the severity of a listed disorder. *Id.* at § 404.1520a(d)(1)–(2).

Under the regulations, an impairment "is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The regulations then define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." *Id.* at § 404.1522(b). Several examples are given, including "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision,

co-workers and usual work situations; and [d]ealing with changes in a routine work setting." *Id.* at § 404.1522(b)(3)–(6) (internal numbering omitted).

In combination, these regulations mean that a claimant with a medically determinable mental impairment that imposes no limitation, or only a mild limitation, on their abilities to understand, remember, and apply information, to interact with others, to concentrate, persist, and maintain pace, and to adapt and manage themselves, and that imposes only *de minimis* limitations on the abilities and aptitudes necessary to do most jobs, does not have a mental impairment that qualifies as "severe" and that will factor into the determination of a claimant's status as disabled. *Id.* at §§ 404.1522(a), 404.1520(d)(1). Courts in the Fifth Circuit have long articulated the standard from the opposite direction; if an impairment interferes at all with an individual's ability to work, that impairment is "severe" under the act. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Neither regulations nor case law, however, require an ALJ, after finding a severe medically determinable mental impairment, to include in a claimant's RFC a complete lack of capacity for one or more of the statutory examples of basic work activities. In other words, a claimant with a severe mental impairment does not need to be completely incapable of understanding, carrying out, and remembering simple instructions. *See id.* at § 404.1522(b)(3). Similarly, a claimant with a severe physical impairment may be able to walk, stand, sit, lift, push, pull, reach, carry, and handle; their severe impairment need only "significantly limit" these abilities. *Id.* at § 404.1522(a); *see also id.* at § 404.1522(b)(1) (listing physical function examples of basic work activities).

Plaintiff carefully clarifies that he is not arguing the five-point scale limitations in the four functional areas used to determine the severity of mental impairments must then be included or accounted for in the RFC. (ECF 20 at 2). This clarification is well-taken, because such arguments have been repeatedly rejected by this Court, albeit in unpublished orders. *See, e.g.*, *Godwin v.*

*Comm'r of Soc. Sec.*, No. 4:23-cv-607-O-BP, 2024 WL 3015325, *8 (N.D. Tex. May 30, 2024) ("The ALJ's findings regarding . . . mental limitations at step two need not match the RFC determinations, as one has to do with impairments and the other with function.") (collecting cases).

Instead, Plaintiff argues that the finding of a severe mental impairment logically requires that the claimant's RFC be assessed to limit performance of some mental basic work activity. (ECF 20 at 2). Strictly construed, this argument is correct—but the ALJ here included such a limitation when he restricted Plaintiff to "understanding, remembering, and carrying out simple work-related instructions." (ECF 13-1 at 26). Thus, Plaintiff's argument, when strictly construed, identifies an error not present in the ALJ's decision.

Plaintiff's argument could be construed, by contrast, to insist that a claimant with a severe impairment be assessed as <u>unable</u> to perform some basic work activity. (ECF 14 at 6). This would simply be incorrect. An impairment is "severe" if it interferes *in any way* with a claimant's ability to work. *Stone*, 752 F.2d at 1101–02. Accordingly, most severe impairments will not leave a person wholly lacking "the abilities and aptitudes necessary to do most jobs." *See* 20 C.F.R. § 404.1522(b).

In short, the ALJ applied the correct legal standard when determining which of Plaintiff's medically determinable impairments were severe, and he applied the correct legal standard when evaluating the Plaintiff's RFC. Because his decision was also supported by substantial evidence, and because Plaintiff has not identified any legal error in it, the undersigned recommends that the decision be affirmed.

B.   *The ALJ's Duty to Develop the Record*

Plaintiff's second argument for overturning the ALJ's decision is that the ALJ did not discharge his legal obligation to assist Plaintiff in developing the medical evidence of record. (ECF 14 at 7–10; ECF 20 at 3–5). Specifically, Plaintiff looks to the opinions of the state agency

consultants who reviewed the Plaintiff's application at the initial and reconsideration stages, each of whom concluded that there was insufficient evidence in the record to evaluate the claimant's application and allegations. (ECF 14 at 8). As a result, argues Plaintiff, "there was not a single medical opinion as to the severity of and limitations arising from [Plaintiff's] mental and physical impairments[; t]he ALJ's assessment of [Plaintiff's] limitations was therefore based on nothing more than lay speculation and cannot be affirmed." (*Id.* at 8–9).

The Commissioner, in response, acknowledges that the ALJ has a duty to fully and fairly develop the record before reaching a decision. (ECF 19 at 5). The Commissioner argues, however, that the record in this case was adequate to support the ALJ's decision (*id.* at 5–6), and that the lack of a medical opinion in the record does not require remand (*id.* at 8–9). For the following reasons, the undersigned agrees with the Commissioner.

Proceedings before an ALJ are not adversarial like proceedings before Article III courts; they are inquisitorial. *Carr v. Saul*, 593 U.S. 83, 89–90 (2021). The role of an ALJ is not to neutrally adjudicate the better of two competing sides, but is rather to "ensure that [the] administrative process is fair to claimants by conducting de novo, informal, non-adversarial hearings[.]" SSR 13-1p, 2013 WL 633939, *2; *accord* 20 C.F.R. § 404.900(b). As such, "[t]he ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (internal citations and footnotes omitted).

This duty prohibits an ALJ from assessing a claimant's RFC in a way that contradicts all medical opinions in the record. *Raper v. Colvin*, 262 F. Supp. 3d 415, 422–23 (N.D. Tex. 2017) (collecting cases). "Medical opinion" has a technical meaning in this context; "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [their]

impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in" performing physical, mental and other demands of work, or in adapting to environmental conditions. 20 C.F.R. § 404.1513(a)(2)(i)–(iii); *accord Ripley*, 67 F.3d at 557 (discussing "a medical source statement describing the types of work that the applicant is still capable of performing").

The law does not require, however, that the record contain any medical opinions in the first place. *Ripley*, 67 F.3d at 557 ("The absence of such a statement, however, does not, in itself, make the record incomplete."); *accord Gutierrez v. Barnhart*, 2005 WL 1994289, *7–*8, 2005 U.S. App. LEXIS 17610, *20–*24 (5th Cir. 2005). If no medical opinion is provided, the inquiry of a reviewing court "focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557. If the ALJ's assessment of a claimant's RFC is not supported by substantial evidence of the limitations that a claimant's impairments impose on the claimant's ability to work, and this lack of substantial evidence results in prejudice to the claimant, the ALJ's decision must be reversed. *Id.*

As a threshold matter, Plaintiff characterizes the ALJ's alleged failure to develop the record as a "legal error," a failure to apply the correct legal standard in assessing the evidence. (ECF 20 at 3). Fifth Circuit precedent, however, treats this issue under the inquiry of "whether substantial evidence supports the Commissioner's decision" pursuant to *Taylor*, 706 F.3d at 602. *Ripley*, 67 F.3d at 557 ("If the ALJ does not satisfy his duty, his decision is not substantially justified. Reversal of his decision, however, is appropriate only if the applicant shows that he is prejudiced.") (footnotes omitted); *accord Raper*, 262 F. Supp. 3d at 422–23.

In this case, Plaintiff has not shown that any failure to develop the record resulted in prejudice or harm.[8] Accordingly, even if the ALJ had failed to adequately develop the record before issuing his decision, Plaintiff has not made the requisite showing to have that decision overturned on appeal.

Moreover, the decision of the ALJ in this case was supported by substantial evidence even though, as Plaintiff points out, "there was not a single medical opinion as to the severity of and the limitations arising from" Plaintiff's impairments. (ECF 14 at 8). This absence does not establish, contrary to Plaintiff's argument, that "[t]he ALJ's assessment of [Plantiff's] limitations was . . . based on nothing more than lay speculation[.]" (*Id.* at 8–9).

The ALJ relied in his decision on direct record evidence of Plaintiff's abilities. In explaining his assessment of Plaintiff's RFC, the ALJ repeatedly referred to evidence of Plaintiff's abilities contained in the medical record:

> [C]laimant exhibited some increased neurological functioning overall as of January 18, 2020. This includes visibly increased alertness and ability to follow simple commands[.] . . . Notwithstanding, there are remarks indicating that the claimant remained somewhat confused, agitated, impulsive, and inconsistently orientation to location [sic] upon routine in-person exam[.] . . . Although the claimant exhibited gradual improvements by February 12, 2020, he was described as having 'significant cognitive deficits[.]' . . . The claimant continued to exhibit some impulsivity, problem-solving difficulties, and other struggles with awareness and balance[.] . . . At the same time, the claimant exhibited gross improvements with range of motion throughout, muscle strength, and coordination[.] . . . The claimant thereafter demonstrated largely intact overall functioning upon outpatient follow-up exams in March and May 2020. I do note that the claimant reported some ongoing memory issues as of that May[.] . . . [T]he claimant demonstrated wholly normal overall appearance upon said exam. This includes with respect to his gait, station, range of motion, muscle strength, and sensation[.] . . . The claimant presented for otherwise routine follow-up exam [sic] on November 16, 2023 due to

---

[8] Prejudice and harm are closely related concepts; if a plaintiff can show prejudice, *i.e.*, that "additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision[,]" then the error will not have been harmless, because it will not be "inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Ripley*, 67 F.3d at 557 n.22, *and Keel*, 986 F.3d at 556.

> increased shortness of breath, nonproductive cough, and other difficulties lifting more than 20 pounds. Of note, the claimant himself reported regular exercise activity at that time. The claimant did, however, re-exhibit inspiratory wheezing, as well as pain and reduced range of motion of the right shoulder on exam.

(ECF 13-1 at 28–29) (internal citations omitted). The ALJ was similarly focused on the question of what Plaintiff could and could not do in the other sections of his decision, especially at step three of the five-step process, determining whether the Plaintiff's severe impairments met a listing. (ECF 13-1 at 23–26).

Each of these citations by the ALJ is to medical record evidence showing what the Plaintiff could do at the time a doctor examined him. If such evidence had not been available, the regulations would have permitted the ALJ to order a consultative examination. 20 C.F.R. § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). Presumably, if this case were remanded, it would be to order a consultative examination, at which a doctor would notate whether Plaintiff could do such things as remain alert, follow commands, restrain impulses, orient himself to his surroundings, balance, perform appropriate feats of memory, move with a normal gait, lift normal burdens, and breathe without wheezing. However, because the medical record contained evidence on these points, no consultative examination was necessary, and because the ALJ relied on that evidence in assessing Plaintiff's RFC, his decision was substantially justified. (*See* ECF 13-1 at 23–26, 28–29).

This is not a case, then, where the ALJ has assessed Plaintiff's limitations based on his lay understanding of a medical diagnosis or raw medical data, as was the problem in *Ripley*. 67 F.3d at 557 ("The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back. What the record does not clearly establish is the effect Ripley's condition had on his ability to work.").

Neither is it a case where the ALJ, after rejecting every medical opinion in the record, substituted his own judgment regarding a claimant's limitations, as was the issue in the many cases cited by Plaintiff. *Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018) ("Here, the ALJ rejected the medical opinions of treating and examining doctors alike, without contradictory evidence from a medical expert of any kind."); *Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, *7, 2016 U.S. Dist. LEXIS 43134, *23 (N.D. Tex. Mar. 31, 2016) ("The ALJ erred in making the RFC determination after rejecting the only medical opinions in the record that addressed the effect of Fitzpatrick's mental impairments on his ability to work."); *and El Neil v. Comm'r of Soc. Sec.*, No. 4:23-cv-473-BP, 2024 WL 265870, *5, 2024 U.S. Dist. LEXIS 12492, *13–*14 (N.D. Tex. Jan. 24, 2024) ("While the ALJ was free to reject the medical opinions in the record, she then had to obtain a medical opinion supporting which work tasks El Neil could perform despite her impairments.").

Indeed, Plaintiff cites a case from this judicial district that discusses the precise issue here at some length. (ECF 20 at 4) (citing *Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-cv-28-O-BP, 2022 WL 2975471, 2022 U.S. Dist. Lexis 133344 (N.D. Tex. June 30, 2022)). In *Vasquez*, as in the instant case, the record contained reports from state agency medical consultants; unlike in this case, the consultants in *Vasquez* each offered a medical opinion, i.e., a statement describing what the claimant could do. 2022 WL 2975471 at *3. The ALJ in *Vasquez* did not rely entirely on either opinion. *Id.* at *5 ("[T]he ALJ here found certain parts of the [consultants'] reports 'less persuasive' than other evidence of record.") (internal citations omitted).

The *Vasquez* court provided a detailed analysis of *Ripley* and explained that, while "ALJs may not make disability determinations utterly devoid of supporting medical opinion evidence[,]" "Vasquez's argument would only be persuasive if RFCs required the support of at least one

[consultant] to be valid." *Id.* The Court distinguished cases, like those cited above, in which the ALJ had rejected all medical opinion evidence in the record before assessing the claimant's RFC. *Id.*

Some of the confusion on this point may be explained by the technical definition of the term, "medical opinion." As noted above, a "medical opinion" is not simply an opinion issued from a medical source; "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s). 20 C.F.R. § 404.1513(a)(2)(i)–(iii). For example, the *Vasquez* court, rejecting the argument that the ALJ could not rely solely on reviewing physicians who had an incomplete record and whose opinions the ALJ found only partially persuasive, said, "What matters is that the ALJ's conclusions are supported by at least one medical opinion and are grounded in substantial record evidence." 2022 WL 2975471 at *5. But "supported by at least one medical opinion" does not mean that the record must contain at least one statement from a medical source; such a conclusion would directly contradict *Ripley*. 67 F.3d at 557 ("The absence of such a statement, however, does not, in itself, make the record incomplete.").

Instead, the requirement is that the record contain substantial evidence supporting the ALJ's conclusions about what the claimant can still do despite their impairments, and what limitations result from those impairments. If the record lacks such evidence, the ALJ is responsible for developing it. *Id.* at 557–58. If the ALJ rejects all statements from medical sources that could constitute such evidence, then he almost certainly will need to procure medical source statements supporting that judgment. *E.g.*, *Salmond*, 892 F.3d at 819. But if the evidence in the record clearly establishes the effects that a claimant's impairments have on their ability to work, then the record contains "medical opinion" evidence, even without any statements from any medical sources on the matter.

As a final note, and as Plaintiff points out, each of the state agency medical consultants in this case, after reviewing the record, determined that there was insufficient evidence to assess Plaintiff's ability to work. (ECF 13-1 at 82, 88, 89–90). Thus, there is a sense in which the ALJ, who did make a finding on Plaintiff's ability to work, disagreed with the consultants. (*See* ECF 14 at 10) (wherein Plaintiff argues an "ALJ's pre-existing duty to develop the record is heightened where there is insufficient evidence to decide a case"). But it is precisely and solely the job of the ALJ to determine whether the evidence in a certain case is sufficient to support a given legal conclusion; the ALJ has no responsibility to defer to physicians on such questions. *Accord Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) *and Taylor*, 706 F.3d at 602–03.

## V.  CONCLUSION AND RECOMMENDATION

In summary, the decision of the ALJ in this case applied the correct legal standard and was supported by substantial evidence. Even if the ALJ were found not to have adequately developed the record, the Plaintiff has not shown that he was prejudiced by any resulting lack of substantial evidence. Thus, the undersigned recommends that the decision of the Commissioner be AFFIRMED and that judgment be entered accordingly.

## VI.  INSTRUCTIONS FOR SERVICE

The Clerk of Court is DIRECTED to send a copy of this Recommendation to each party by the most efficient means available.

IT IS SO ORDERED.

ENTERED June 25, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## **NOTICE OF RIGHT TO OBJECT**

Any party may object to these proposed findings, conclusions and recommendation. Service is complete upon mailing, FED. R. CIV. P. 5(b)(2)(C), or transmission by electronic means, FED. R. CIV. P. 5(b)(2)(E).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendations set forth by the Magistrate Judge and accepted by the District Judge. See Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1), as recognized in ACS Recovery Servs., Inc. v. Griffin, 676 F.3d 512, 521 n.5 (5th Cir. 2012); Rodriguez v. Bowen, 857 F.2d 275, 276-77 (5th Cir. 1988).